COPY

1  LAW OFFICES OF COURTNEY M. COATES
2  COURTNEY M. COATES, ESQ.  - 203448
   26201 Ynez Road, Suite 103
3  Temecula, CA 92591
   P:  (951) 595-8118
4  F:  (951) 296-2186
5  ccoateslaw@gmail.com

6
   WALKER & ASSOCIATES, LLP
7  JAMES L. WALKER, JR. - 411767
   80 Wildhorse Court
8  Monroe, CT  06468
9  (203) 324-0091

10 Attorneys for Plaintiffs

11

12              **UNITED STATES DISTRICT COURT**

13        **IN AND FOR THE CENTRAL DISTRICT OF CALIFORNIA**

14

15 | MASSEY ENTERPRISE | No. CV12-05327-JFW (MRWX) |
   | INTERNATIONAL, INC.; BOY- | |

16 | O-BOY ENTERTAINMENT, | **SECOND AMENDED COMPLAINT** |
   | INC.; ANGEL MASSEY; KYLE | **FOR:** |
17 | MASSEY; CHRISTOPHER | |
   | MASSEY | 1. **COPYRIGHT INFRINGEMENT** |
18 | | 2. **COPYRIGHT INFRINGEMENT** |
   | | 3. **FRAUD & DECEIT** |
19 |           Plaintiffs, | 4. **BREACH OF CONTRACT** |
   | | 5. **BREACH OF THE IMPLIED** |
20 |       v. | **COVENANT OF GOOD FAITH** |
   | | **AND FAIR DEALING** |
21 | ASSOCIATED TELEVISION | 6. **MISAPPROPRIATION** |
   | INTERNATIONAL; HELPING | 7. **TORTIOUS INTERFERENCE** |
22 | HANDS, LLC; DAVID McKENZIE, | **WITH PROSPECTIVE** |
   | also known as DAVID STANTON, | **ECONOMIC ADVANTAGE** |
23 | and A&E NETWORKS, LLC and | 8. **UNFAIR COMPETITION** |
   | | 9. **CONSTRUCTIVE TRUST &** |
24 | DOES 1-10, | **ACCOUNTING** |

25 |           Defendants. | **[DEMAND FOR JURY TRIAL]** |

26

27

28

                          - 1 -

CIVIL COMPLAINT

Plaintiffs MASSEY ENTERTAINMENT INTERNATIONAL, INC., BOY-O-BOY ENTERTAINMENT, INC., ANGEL MASSEY, KYLE MASSEY, and CHRISTOPHER MASSEY (collectively "Plaintiffs") complain as follows:

## **INTRODUCTION**

1.     Plaintiffs bring this action for separate and distinct acts of federal copyright infringement, breach of contract, fraud, violation of California Civil Code 3344, and unfair, fraudulent, and unlawful business practices.  The gravamen of Plaintiffs' claims arises from ATI's unauthorized production and airing of four television series, entitled *Bristol Palin: Life's a Tripp*, *World's Funniest Moments*, *Elizabeth Stanton's Great Big World*, and *Laura McKenzie's Traveler*, the latter three of which have been syndicated in nearly all fifty states.

2.     These above-referenced syndicated series feature unauthorized footage of the Masseys doing charitable work around the world and/or enjoying family vacations throughout the world ("Syndicated Series").  Defendants have illegally exploited the Masseys in the Syndicated Series by infringing a music copyright and exploiting their images and names without their permission and without compensating the Masseys.

3.     The series, *Bristol Palin:  Life's A Tripp*, is the subject of several contracts which Defendants entered into with Plaintiffs.  After Plaintiffs refused to release their ownership rights in the Bristol Palin Series and modify the terms of compensation, Defendants purported to suspend these contracts placing them on an

- 2 -

CIVIL COMPLAINT

indefinite "hiatus."  Defendants are now attempting to steal the Series by editing

and airing prior footage and excluding Plaintiffs, thus, depriving Plaintiffs of their

agreed-upon fees, credit, and residual income.  Accordingly, Plaintiffs seek relief

from this Court to enjoin Defendants separate acts of infringement and award

damages, penalties, and costs for all violations of federal and state laws.

## PARTIES AND/OR KEY PARTICIPANTS

4.     Plaintiff MASSEY ENTERPRISE INTERNATIONAL, INC.

("MEI") is a California corporation authorized to transact business within the State

of California.  MEI is a loan-out corporation furnishing the services of award-

winning and internationally acclaimed television actors, KYLE MASSEY and

CHRISTOPHER MASSEY, who are siblings.

5.     Plaintiff BOY-O-BOY ENTERTAINMENT, INC. ("BOY-O-BOY") is

a California corporation authorized to transact business within the State of

California.  BOY-O-BOY is a loan-out corporation furnishing the services of

producer, ANGEL MASSEY.

6.     Plaintiff ANGEL MASSEY ("ANGEL") is the mother and longtime

manager of KYLE MASSEY and CHRISTOPHER MASSEY.  Over several years,

ANGEL has written, developed, and produced television concepts featuring her

sons, KYLE and CHRISTOPHER.

7.     Plaintiff KYLE MASSEY ("KYLE") is an American actor, dancer,

singer, comedian, and rapper from Atlanta, Georgia who resides and does

CIVIL COMPLAINT

substantial business in California.  He is perhaps best known for starring in the

Disney Channel sitcom *That's So Raven*, in which he played Cory Baxter, and in the

Disney show *Cory in the House*, a spin-off of *That's So Raven*.  KYLE is well-

known for starring in the Disney Channel Original *Movie Life is Ruff*.  Massey is the

brother of *Zoey 101* star CHRISTOPHER MASSEY.  As a producer and rapper,

KYLE has released several songs for Walt Disney Records and Hollywood Records

including "Underdog Raps."  KYLE finished second place as a finalist in ABC's

*Dancing with the Stars*.  He is currently the voice of Milo in the Disney animated

series *Fish Hooks* and a performer/dancer in *Dancing With the Stars – Live Las

Vegas*.

     8.     Plaintiff CHRISTOPHER MASSEY ("CHRISTOPHER") is an

American actor, comedian and rapper from Atlanta, Georgia, best known for

starring as Michael Barrett in the Nickelodeon television series *Zoey 101*.  He

resides in California.  CHRISTOPHER has received many awards including

a *Young Artist Award* and *Emmy Award* nominations.  He has appeared in several

commercials with his younger brother, KYLE, for *Cold Stone* Creamery, *Disney*

and *Pepsi*, among others.  CHRISTOPHER is also a singer/rapper, songwriter and

music producer for several well known singers within the music industry.

CHRISTOPHER has guest starred alongside his brother on Disney's *That's So

Raven*.  He and his brother have had starring roles on the BET sitcom *The Parkers*.

In 2006, CHRISTOPHER was named one of Teen People's "25 Hottest Stars Under 25."

9.      Plaintiffs KYLE, CHRISTOPHER, and ANGEL are collectively referred to herein as "the MASSEYS."

10.      BRISTOL PALIN ("BRISTOL") is the second child and oldest daughter of former United States Vice Presidential Candidate and Governor of the State of Alaska, Sarah Palin.  BRISTOL rose to fame as a minor teenager during the 2008 presidential election.  After Governor Palin was selected as Senator John McCain's running mate for Vice President, news stories surfaced that Governor Palin's unmarried, 17-year old daughter, BRISTOL, was pregnant.  This news appeared to undermine Governor Palin's conservative platform for traditional family values.  BRISTOL became the subject of enormous curiosity, criticism, and misunderstanding.  After BRISTOL gave birth to her son, TRIPP, she answered this public scrutiny by making numerous public appearances and accepting ABC's invitation for her to participate as a contestant in the 11th Season of *Dancing with the Stars*.  BRISTOL successfully garnered millions of fans during the show and finished third place next to second-placed KYLE MASSEY.

11.      Plaintiffs are informed and believe and, based thereon, allege that Defendant ASSOCIATED TELEVISION INTERNATIONAL ("ATI"), is a fictitious business name of ASSOCIATED ENTERTAINMENT RELEASING, INC., a California corporation.  ATI transacts substantial business and maintains its

CIVIL COMPLAINT

principal office within Los Angeles, California.   ATI holds itself out as a media company that has been in the business for over 30 years engaged in full-service production and distribution of television programming.   To that end, ATI holds itself out as a leading independent syndicator of original programming in the United States.

12.   Plaintiffs are informed and believes, and based thereon alleges that, ATI has contracted with A&E TELEVISION NETWORKS, LLC ("AETN") to air copyrighted materials and derivative works of Plaintiffs.   AETN is also an intended third-party beneficiary under the contracts mentioned herein.   AETN owns and operates a portfolio of ten cable television channels, including BIO and Lifetime.

13.   Plaintiffs are informed and believe that Defendant HELPING HANDS, LLC ("HELPING HANDS"), is a Delaware limited liability company, and a wholly-owned subsidiary of ATI, actively managed by STANTON.   Plaintiffs are informed and believe that HELPING HANDS, LLC, a Delaware limited liability company, is not registered and legally authorized to transact business in California. Plaintiffs are informed and believe that HELPING HANDS, LLC and DOES 1 through 10, have ratified, approved, are directly involved, a co-conspirator with, or alter-ego of the other Defendants, and/or otherwise complicit in the wrongful acts alleged herein.

14.   Plaintiffs are informed and believe, and based thereon alleges, that Defendant DAVID STANTON ("STANTON"), also known as DAVID

- 6 -

MCKENZIE, is the owner and principle of ATI and HELPING HANDS, LLC. STANTON is an individual engaged in the contractual breaches, acts of misappropriation, fraud and copyright infringement alleged herein.

15.   The true names and capacities of individuals, partnerships, corporations, or other entities sued herein as DOES 1 through 10 are unknown to Plaintiffs.  Plaintiffs, therefore, sue said defendants by fictitious names.  Plaintiffs are informed and believe, and based upon such information and belief, allege that each fictiously named defendant is responsible in some way for the occurrences, conduct, act and omissions herein alleged and that Plaintiffs' damages and injuries as herein alleged were proximately caused by defendants.

## JURISDICTION AND VENUE

16.   This Court has subject matter jurisdiction over Plaintiffs' claim for copyright infringement pursuant to 17 U.S.C. §501, 28 U.S.C. §§1331 and 1338(a).   Moreover, this Court has supplemental jurisdiction over the state law claims alleged pursuant to 28 U.S.C. §1367, because the state law claims are so related to claims in the copyright claim that they form part of the same case or controversy under Article III of the United States Constitution.

17.   This Court has personal jurisdiction over Defendants pursuant to Rule 4(K)(1)(a) of the Federal Rules of Civil Procedure because, upon information and belief, Defendant has conducted and continues to conduct substantial business in the State of California.  This business includes contracting with Plaintiffs to

perform services and produce music here in California, and owning and operating a media production company and website for the purposes of directly marketing, selling, distributing, and supporting various goods and services to people in California, including residents of California.

18.     Venue in this district is proper under 28 U.S.C. §§1391 and 1400 because a substantial part of the events giving rise to the claims asserted herein arise in this district, and Defendants, upon information and belief, are and at all times were doing business in this district.

## FACTS COMMON TO ALL CLAIMS

19.     Within the last three years, the MASSEYS have worked with STANTON and ATI to create a documentary television series showing their work with various charities. They traveled to, among other places, Kenya, Vietnam, and Nicaragua. Other celebrities would join the MASSEYS in their charitable work, such as, Nickelodeon actor, Drake Bell, Disney actors Jake T. Austin and Chelsea Kane, and American Idol's Ace Young. MASSEYS and STANTON became friends. Also, during this time, STANTON would invite the MASSEYS to vacation with his family in the British Virgin Islands and Bahamas. These family vacations were completely unrelated to any of the charitable causes in which the MASSEYS participated for compensation.

20.     From September to November 2010, KYLE and BRISTOL

CIVIL COMPLAINT

participated in ABC's hit show *Dancing with Stars*, which returned for its 11th

season. *Dancing with the Stars* is a televised dance competition featuring some of

today's most popular celebrities. During the show, the MASSEYS became personal

friends of BRISTOL and, after getting to know her, the MASSEYS believed they

would enjoy working with BRISTOL on future television projects.

21.    On or about November 2010, the MASSEYS created a written pilot

treatment for a half-hour television series featuring KYLE, CHRISTOPHER, and

BRISTOL, and her infant son, TRIPP, entitled *Bristol-ogy 101.* The treatment

showed BRISTOL, her son, TRIPP, KYLE and CHRISTOPHER, living together

away from BRISTOL's home in Alaska, attending college while raising TRIPP, and

surviving life's episodes with the support of each other, friends and family.

22.    Prior to contracting with Defendants, the MASSEYS registered the

pilot treatment for *Bristol-ogy 101* with the Writer's Guild of America. In early

2011, ANGEL/BOY-O-BOY engaged writers for *Bristol-ogy 101.* On August 23,

2011, the MASSEYS federally registered the original television pilot treatment for

*Bristol-ogy 101* with the United States Copyright Office, Registration No.

TXu001765283. *Bristol-ogy 101* tells the story of BRISTOL, a single mom, raising

her infant son, TRIPP, receiving support from and living with KYLE and

CHRISTOPHER, going to school, and being supported by friends and family.

ANGEL sent the pilot treatment to BRISTOL to explore her interest in the *Bristol-*

- 9 -

*ogy 101* concept.  BRISTOL expressed her enthusiasm for the concept and agreed to work with the MASSEYS on the project.

23.     One night over dinner following a night's taping of *Dancing with the Stars*, ANGEL verbally communicated to STANTON and Cindy Osbrink of The Osbrink Agency, in confidence, several ideas for the *Bristol-ogy 101* television concept showing BRISTOL, a young single mother, and her son, TRIPP, living and surviving life's episodes and challenges with CHRISTOPHER and KYLE.  ATI and STANTON expressed no interest in *Bristol-ogy 101* and found the idea silly.  Thereafter, Defendants conspired and embarked upon a plan to gradually misappropriate from the MASSEYS the creative concepts surrounding *Bristol-ogy 101,* featuring BRISTOL and, her son, TRIPP, surviving on their own living with KYLE and CHRISTOPHER away from her home in Alaska.

24.     Specifically, on or about March 8, 2011, ATI and STANTON approached ANGEL and falsely represented that he wanted KYLE, CHRISTOPHER, and BRISTOL to participate in a weekly documentary series where they would do charity work around the world, similar to what KYLE and CHRISTOPHER had previously done with ATI.  The documentary would be tentatively entitled *Helping Hands* which was in keeping with the purpose and subject matter of the series.  ATI and STANTON also proposed that CHRISTOPHER and KYLE produce original music for the Series.  Because ANGEL originated the concept of CHRIS, KYLE, and BRISTOL working together,

- 10 -

ATI and STANTON proposed that ANGEL attach as one of the producers of the Series, providing consulting services and creative input, and that KYLE and CHRISTOPHER would receive $25,000 per episode, together with any other compensation on a "most favored nations" basis among all series regulars.

25. On or about March 17, 2011, MEI and ATI entered into two co-terminous Artist Deal Memos with KYLE and CHRISTOPHER, respectively, whereby each of them would appear in a one-half (1/2) hour television episodic series, tentatively entitled *Helping Hands* ("*Helping Hands*"). ATI and STANTON represented to Plaintiffs that *Helping Hands* would star teenaged mother, BRISTOL, her son, TRIPP, together with KYLE, CHRISTOPHER, who would do charity work on a weekly basis. Defendants never mentioned that KYLE, BRISTOL, TRIPP, and CHRISTOPHER would live together. The Artist Deal Memos each required that, in exchange for KYLE and CHRISTOPHER's participation in *Helping Hands*, ATI would separately pay each of them Twenty-Five Thousand Dollars per episode for all episodes produced, on a "pay or play" basis, with a minimum of ten (10) episodes, totaling Five Hundred Thousand Dollars ($500,000.00). Both Artist Deal Memos entitle MEI, KYLE, and CHRISTOPHER to a portion of the earnings from the Series to be mutually agreed upon (on a most favored nations basis with other artists who are regulars on the Series). Both Artist Deal Memos contained an exclusivity clause which required (with some exceptions) that neither KYLE nor CHRISTOPHER serve as the

- 11 -

principal talent, executive producer of or a regular participant in any cinema

verite/non-fiction/documentary television program or series occurring on the major

networks.

26.     On March 23, 2011, ATI and STANTON agreed to use KYLE and

CHRISTOPHER's original music and lyrics to be incorporated in or synchronized

with episodes of *Helping Hands*.  ATI agreed that, from such music, KYLE and

CHRISTOPHER would receive 100% of the music publishing and performance

royalties.

27.     Upon execution of the Artist Deal Memos and Producer's Deal

Memo, Plaintiffs fully performed their respective contractual obligations.  ATI set a

production schedule over a period of ten (10) weeks, beginning on July 25, 2011.

Over the course of this ten-week period, ATI began to unilaterally change the

creative direction of the Series without ANGEL's prior knowledge or consent.

Although the Producer's Deal Memo required that ATI meaningfully consult with

ANGEL and permit her to be present at any shoot days in which KYLE and

CHISTROPHER were also participating, ATI did not include ANGEL in

production meetings and did not meaningfully consult with her, and failed to keep

ANGEL informed concerning the creative direction of the Series.  Although the

Artist Deal Memos provided that KYLE and CHRISTOPHER would have the right

of meaningful consultation for episode scripts and final cut of all episodes, ATI did

- 12 -

not provide KYLE or CHRISTOPHER any meaningful opportunity to see the final cut, let alone exercise any editing rights.

28.     On or about May 9, 2011, A&E Networks, LLC announced that it had purchased for its BIO channel, ten (10) half-hour episodes of a reality series, which included a storyline of BRISTOL raising her two-year old son, TRIPP, and living with KYLE and CHRIS in Los Angeles while also working for local charity. KYLE and CHRIS, two boys, would help support BRISTOL, a single mom, by babysitting, looking after, and caring for TRIPP while BRISTOL lived away from her family in Alaska.  This concept was originated by ANGEL and is substantially similar to the *Bristol-ogy 101* concept.

29.     On May 9, 2011, Plaintiffs confronted ATI and STANTON concerning Defendants' efforts to misappropriate *Bristol-ogy 101* without their knowledge.  In response, Defendant STANTON responded: " . . . I just always do what I want ha ha."

30.     To allay these concerns, on or about July 15, 2011, ANGEL entered into a Producer's Deal Memo to serve as an Executive Producer for *Helping Hands*. The Producer's Deal Memo provided that ANGEL would receive the exclusive "Created By" credit for the show and be compensated Ten Thousand Dollars ($10,000) per episode (on a pay or play) basis.   ANGEL understood that, because the Artist's Deal Memos guaranteed all episodes produced with a minimum guarantee of (10) episodes, she would be entitled to a minimum payment of One

- 13 -

Hundred Thousand Dollars ($100,000.00).  In addition, the Producer's Deal Memo

provided that ANGEL receive ten (10%) percent of Defendants' share of gross

receipts received from the Network, including videogram receipts, merchandising,

publishing, and/or sponsors.  The Producer's Deal Memo expressly reserved, and

Defendants expressly acknowledged, ANGEL's rights to pre-existing ideas or

concepts, as well as ancillary and associated rights to produce a future reality series

involving one or more of the same participants in the future:

> Lender/Angel agrees that all proceeds of their work relating to the
> Series are a specially ordered "work for hire" on behalf of the Company, the
> Company is deemed author and copyright holder of all such work; provided,
> however, *any other ideas or concepts of Lender/Angel developed prior to*
> *the Series or unrelated to the Series (but which may contain some or all of*
> *the participants as the Series, including but not limited to, the concept of*
> *Bristol Palin, Kyle Massey and Christopher Massey living and working*
> *together) shall remain the sole and exclusive property of Lender/Angel*[.]
>
> ***
>
> *Angel Massey shall be accorded the same or better terms as set forth herein*
> *regarding any future series produced by Company*, which is derived from
> her status as the creator of the Series, including but not limited to, any spin-
> offs, prequels or sequels, merchandising, publishing, home video, new media,
> etc. of the Series, and *Company acknowledges that Angel has all ancillary*
> *and associated rights derived from her status as the creator of the Series*
> *including but not limited to spin-offs, prequels and sequels in all formats in*
> *this cinema verite/non-fiction and documentary television Series*.
> (Producer's Deal Memo, pg. 2, ADDITIONAL TERMS AND
> CONDITIONS)

31.     Beginning July 2011, ATI began to produce the *Helping Hands*

reality series involving BRISTOL, TRIPP, CHRISTOPHER, and KYLE, their

family and friends.  For example, ATI began to film BRISTOL, CHRISTOPHER,

- 14 -

and KYLE living in a house, together with BRISTOL and her son, TRIPP.  *Helping Hands* featured scenes of KYLE and CHRISTOPHER going to parenting classes to assist BRISTOL with babysitting her son, TRIPP.  There were scenes featuring KYLE and CHRISTOPHER taking TRIPP to a photo shoot.  Defendants arranged for KYLE, BRISTOL, TRIPP, and CHRISTOPHER to travel to Alaska and spend time interacting with the Palin family at their home.  BRISTOL, ANGEL, CHRIS, and KYLE agreed to include the Palin family, as participants in the Series at the time the idea was originally pitched to BRISTOL .  Defendants shot scenes of the Palin family throwing a party for BRISTOL, celebrating her move to Los Angeles, wishing her well, and appreciating KYLE and CHRIS for befriending and supporting their daughter.   Defendants shot scenes of BRISTOL and her family camping together all night.  Defendants shot scenes of BRISTOL, KYLE, and CHRSTOPHER riding ATV motorcycles, river rafting in Alaska, and visiting BRISTOL's grandparents in Alaska.  In one scene, BRISTOL talks about how sad she is that TRIPP does not have a dad, and she cries about not having any help with child care.

32.     Pursuant to the Producer's Deal Memo, ANGEL expressly reserved all copyright interests in a future related or unrelated Series produced by Defendants involving some or all of the participants in *Helping Hands*, including but not limited to, any spin-offs, prequels or sequels, and all ancillary and associated rights.

- 15 -

33.      Plaintiffs fully performed their contractual obligations under the Artist Deal Memos and Producer Deal Memo, unless otherwise excused. Defendants, however, did not.

34.      On or about August 2011, ATI announced that it would not pay BOY-O-BOY/ANGEL the Executive Producer's fee as required under the Producer's Deal Memo. Defendants refuse to pay the contractual amounts owed under the Producer's Deal Memo, stating the Network was changing the direction of the Series.

35.      In September 2011, after Plaintiffs shot several episodes of *Helping Hands*, STANTON notified the MASSEYS that A&E Television Networks had placed the production on a "hiatus" and, therefore, ATI would be suspending their contracts.  Although Defendants purported to suspend the MASSEYS' performance, the subject contracts contained exclusivity provisions and non-competition clauses which unreasonably restrained CHRISTOPHER and KYLE's ability to pursue similar contract opportunities.  ATI, nonetheless, continued to film episodes with BRISTOL, her friends, and family without the MASSEYS during this indefinite hiatus.  Defendants began creating a hostile working and living environment at the house where KYLE and CHRISTOPHER were living as tenants during the production of the Series.   In bad faith, Defendants further notified Plaintiffs to vacate the house, thus, further preventing their performance under the contracts.

CIVIL COMPLAINT

36.     Defendants then informed Plaintiffs that they would not pay the remaining monies owed under the March 17, 2011 Artist Deal Memos.  Instead, Defendants attempted to amend the contracts' terms and cause Plaintiffs to sign a written modification and release of ownership rights.  Plaintiffs have refused to sign these contract modifications because Defendants' proposed material changes to the parties' written agreements are unacceptable.

37.     In February 2012, A&E Television Networks announced that it would be working with ATI to produce a substantially identical reality series, entitled *Bristol Palin:  Life's A Tripp*, which (except for the MASSEYS) features the same participants in *Helping Hands*, namely the single teenaged mom, BRISTOL, TRIPP, and the Palin family and friends.  The Series would feature BRISTOL living in Los Angeles with her sister, and adjusting to her move back from Los Angeles to Alaska and receiving the support of the Palin family and friends.  Defendants seek to exploit the copyrighted work and creative elements of *Helping Hands* to produce a derivative series, using previously unaired prior footage in *Helping Hands*, without credit, consent from, and compensation to the MASSEYS.  Under the Producer's Deal Memo, *Bristol Palin:  Life's A Tripp* is a derivative series from *Helping Hands* and ANGEL's status as creator and Executive Producer of that series.  *Bristol Palin: Life's A Tripp* is scheduled to air on June 19, 2012 on AETN's Lifetime channel.

38.     In addition, Defendants have continued to use previously taken

- 17 -

video footage of KYLE and CHRISTOPHER on family vacation or doing charity work to promote ATI's unrelated Syndicated Series, including but not limited to, *World's Funniest Moments, Laura McKenzie's Traveler,* and *Elizabeth Stanton's Great Big World. Laura McKenzie's Traveler and Elizabeth Stanton's Great Big World* are hosted by STANTON's immediate family members, including his wife, Laura, and daughter, Elizabeth. These programs have already aired and Defendants will continue to air this unauthorized footage in the Syndicated Series unless enjoined. *Elizabeth's Stanton's Great Big World* is scheduled to air from September 2011 to September 2012 on the Fox Reality Channel. Plaintiffs are informed and believe that KYLE and CHRISTOPHER are included in the following episode titles for *Elizabeth Stanton's Great Big World*: "Vietnam Are You Listening," "Caribbean Conservation," "African Safari," "Spirit of Mississippi," "Dolphin Adventure," "Miami Culture," "Florida Wildlife," and "Schools of Nicaragua." Plaintiffs have discovered on www.youtube.com several unauthorized *Laura McKenzie's Traveler* episodes, featuring KYLE and CHRISTOPHER doing charity work, including but not limited to: British Virgin Islands (Part 1); British Virgin Island (Part 2); Nicaragua (Part 1); Nicaragua (Part 2); Vietnam (Part 1); Vietnam (Part 2); Kenya-Tourism Episode.

39. ATI and STANTON never obtained legal consent to use the creative contributions, names, likenesses, and images of KYLE and CHRISTOPHER in the above-referenced Syndicated Series. Nor did Defendants obtain the MASSEYS'

- 18 -

consent to use this footage for unrelated commercial programming, especially

without payment of a fee, residuals, credit, and other standard consideration.

### FIRST CLAIM FOR RELIEF

**(Copyright Infringement – Violation of 17 U.S.C. §501-
[Brought By the MASSEYS Only As to All Defendants and DOES 1-10]**

40.     Plaintiffs repeat and re-allege paragraphs 1 through 39 as though

fully set forth herein.

41.     Defendants had reasonable access to the original copyrighted

work of *Bristol-ogy 101,* and those derivative works, such as *Helping Hands*.

42.      Plaintiffs are informed and believe, and based thereon allege,

that Defendants' new reality series, *Bristol Palin: Life's A Tripp,* is a derivative

work, spin-off, sequel, or prequel of  the series *Bristol-ogy-101* and *Helping Hands*

created by ANGEL and widely announced to air on BIO.  Defendants' use and

publication of the reality series, *Bristol Palin:  Life's A Tripp,* without the

MASSEYS' approval or authorization infringes upon Plaintiffs' exclusive copyright

pursuant to 17 U.S.C. §501.

43.      Plaintiffs are entitled to recover from Defendants the amount of

their actual damages incurred as a result of the infringement, in such amount as is

shown by appropriate evidence upon the trial of this case. 17 U.S.C. §504.  Based

on the conduct alleged, Plaintiffs are entitled to damages arising from this

infringement, including but not limited to, actual, statutory and/or exemplary

CIVIL COMPLAINT

damages for Defendants' "willful" infringement of Plaintiffs' copyrighted works. (17 U.S.C. §504(c)(2).)

44.     Plaintiffs are also entitled to injunctive relief pursuant to 17 U.S.C. §502 and to an order impounding any and all infringing materials pursuant to 17 U.S.C. §503.  Plaintiffs have no adequate remedy at law for Defendants' wrongful conduct because, among other things, (a)  Plaintiffs' copyright is unique and valuable property having market value impractical to assess, (b) Defendants' infringement harms Plaintiffs such that Plaintiffs could not be made whole by any monetary award, and (c) Defendants' wrongful conduct, and the resulting damage to Plaintiffs, is continuing.

45.     Plaintiffs are also entitled to recover their attorneys' fees and costs of suit. 17 U.S.C. §505.

## SECOND CLAIM FOR RELIEF

**(Copyright Infringement— Violation of 17 U.S.C. §501**
**[Brought By KYLE MASSEY and CHRISTOPHER MASSEY against ATI,**
**STANTON and DOES 1-10]**

46.     Plaintiffs, and each of them, repeat and re-allege paragraphs 1 through 45, as though herein.

47.     Defendants have repeatedly and willfully infringed upon the Masseys' copyright in that certain musical composition, entitled *Hey Lady* [Reg. SRU000995636 12-1-2010], which ATI has published in a syndicated episode of *Elizabeth Stanton's Great Big World*.  Under the United States Copyright Act, the

- 20 -

copyright owner is entitled to recover statutory damages (up to $150,000 per instance) or the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages.

48.     Based on the conduct alleged, Plaintiffs are entitled to damages arising from this infringement, including but not limited to, actual, statutory and/or exemplary damages for Defendants' "willful" infringement of Plaintiffs' copyrighted works.  (17 U.S.C. §504(c)(2).)

49.     Plaintiffs are also entitled to injunctive relief pursuant to 17 U.S.C. §502 and to an order impounding any and all infringing materials pursuant to 17 U.S.C. §503.  Plaintiffs have no adequate remedy at law for Defendants' wrongful conduct because, among other things, (a)  Plaintiffs' copyright is unique and valuable property having market value impractical to assess, (b) Defendants' infringement harms Plaintiffs such that Plaintiffs could not be made whole by any monetary award, and (c) Defendants' wrongful conduct, and the resulting damage to Plaintiffs, is continuing.

50.     Plaintiffs are also entitled to recover their attorneys' fees and costs of suit. 17 U.S.C. §505.

/ /

/ /

- 21 -

# THIRD CLAIM FOR RELIEF

## (FRAUD & DECEIT--
### [Brought By All Plaintiffs Against ATI, STANTON, and HELPING HANDS and DOES 1-10]

51.     Plaintiffs, and each of them, repeat and re-allege paragraphs 1

through 44, as though fully set forth herein.

52.     By engaging in the wrongful acts alleged, Defendantshave

committed fraud by and through STANTON inducing Plaintiffs to sign the

Producer's Deal Memo and Artist Deal Memos and making the following false

representations of fact or engaging in the following deceit: (1) entering into the

Artist Deal Memos and Producer's Deal Memo with Plaintiffs without any intent, at

the time of contract, to fully perform and, more specifically, misrepresenting  and

promising in writing to Plaintiffs, at the time of contract, that ATI would pay

Plaintiffs for the ten (10) guaranteed episodes on a "pay or play" basis and residual

income when, in fact, the converse was true; (2) misrepresenting to BOY-O-BOY

and ANGEL, at the time of contract, that ATI would not seek or claim any rights in

pre-existing or derivative works in *Helping Hands,* which were expressly reserved

by ANGEL; (3) misrepresenting to BOY-O-BOY and ANGEL, at the time of

contract, that ATI would include ANGEL as a producer and offer same or better

terms for any future reality series that derived from her status as the creator of the

original *Helping Hands* series; (3) failing to disclose to Plaintiffs, at the time of

contract, that ATI intended to lure away BRISTOL to do a separate, substantially

- 22 -

similar, and competing project without the MASSEYS, while misappropriating and

selling Plaintiffs' idea and copyrighted work, which involved BRISTOL, TRIPP,

the Palin family and friends, without Plaintiffs' participation, knowledge, or

authorization; (4) failing to disclose to Plaintiffs, at the time of contract, that ATI

would sell the concept of *Helping Hands* and/or *Bristol Palin:  Life's A Tripp*

without Plaintiffs' consent and participation in final edits, music, income, and

credit;  (5) inducing Plaintiffs to sign contracts to perform limited charitable work

with the fraudulent intent to misappropriate and exploit their names, likenesses, and

images in unrelated commercial programming, such as the Syndicated Series,

without their consent; (6) intentionally and deceptively used the prior footage shot

from *Helping Hands* in episodes produced for a derivative series, *Bristol Palin:*

*Life's A Tripp*, but editing KYLE and CHRISTOPHER out of those episodes to

conceal the MASSEY's participation and fraudulently deprive the MASSEYS of

compensation, including residual income as provided by contract.

> 53.    Plaintiffs justifiably and reasonably relied upon the foregoing

conduct, concealments, and misrepresentations to their detriment.  They would not

have entered and continued to perform the above-referenced written contracts but

for STANTON and ATI's misrepresentations, concealments, and fraudulent

conduct.

54.    As a proximate result, Plaintiffs have sustained damages according to proof.  In addition, Defendants' acts were willful, malicious, fraudulent, and oppressive, entitling Plaintiffs to recover exemplary damages.

## FOURTH CLAIM FOR RELIEF

### (Breach of Express And/Or Implied Contracts—
### [Brought by All Plaintiffs Against All Defendants and DOES 1-10]

55.    Plaintiffs repeat and re-allege paragraphs 1 through 54, as though fully set forth herein.

56.    Defendants, and each of them, have materially breached each of the Artist Deal Memos and Producer's Deal Memo as set forth herein.  In addition, Defendants have been unjustly enriched by their breaches and other bad faith conduct in failing to perform the contracts.

57.    Specifically, Defendants have (i) suspended and failed to perform the subject contracts; (ii) failed to pay the guaranteed compensation for ten (10) episodes of *Helping Hands* and/or *Bristol Palin:  Life's A Tripp* pursuant to the terms of these contracts; (ii) not permitted "meaningful consultation" on the creative elements and final cut of *Helping Hands* and/or *Bristol Palin:  Life's A Tripp*; (iii) failed to incorporate the Plaintiff's musical compositions and songs in *Helping Hands* and/or *Bristol Palin:  Life's a Tripp* as agreed, thereby, preventing Plaintiffs' from earning fees, royalties, and the platform to promote their music; (iv) refused to pay residual compensation for *Helping Hands* and/or *Bristol Palin:  Life's A Tripp*, as well as include the required credit, for derivative works, such as *Bristol Palin:*

*Life's A Tripp*, in bad faith; (v) after suspending the contracts with Plaintiffs,

entered into an agreement to produce a reality series involving BRISTOL and

TRIPP, entitled *Bristol Palin: Life's A Tripp,* without Plaintiffs' consent and

participation; (vi) intentionally used the prior footage shot from *Helping Hands* in

episodes produced for a derivative series, *Bristol Palin: Life's A Tripp*, but editing

the images of KYLE and CHRISTOPHER out of those episodes in bad faith to

interfere with the MASSEYS' contract rights, including the right to compensation,

residual income, and credit; (vi) incorporating prior video footage of KYLE and

CHRISTOPHER doing charity work and vacations into unrelated commercial

television shows, such asthe Syndicated Series, without prior consent and

compensation to Plaintiffs.

58.     Notwithstanding the written contracts, Plaintiffs prepared an

original television pilot treatment, *Bristol-ogy 101,* and created a derivative

television concept which Plaintiffs disclosed to Defendants prior to the sale of

*Bristol Palin: Life's A Tripp* to AETN.  ATI voluntarily accepted the disclosure of

*Bristol-ogy 101* and jointly produced with ANGEL a derivative concept contained

in *Helping Hands*, knowing that Plaintiffs intended to be compensated, at very least,

for the reasonable value of Defendants' use of these concepts or any derivative

works.

59.     Defendants shot video footage of KYLE and CHRISTOPHER under

the guise that they were on vacation and participating in charity work in various

- 25 -

CIVIL COMPLAINT

countries.  Defendants knew or had reason to know that any commercial use of the footage would require Defendants' informed written consent and reasonable compensation.

60.     Defendants have refused to compensate Plaintiffs for the unauthorized use of Plaintiffs' works, derivative works, and future earnings derived therefrom.

61.     As a result of these breaches, Plaintiffs have sustained actual and consequential damages for Defendants' breaches of written contracts relating to *Helping Hands* and/or *Bristol Palin:  Life's A Tripp*.  Defendants have also been unjustly enriched by their conduct and, therefore, Plaintiffs are entitled to be compensated, at very least, the reasonable value for Defendants' misappropriation.

## FIFTH CLAIM FOR RELIEF

**(Breach of the Implied Covenant of Good Faith and Fair Dealing—
[Brought by All Plaintiffs Against All Defendants and DOES 1-10]**

62.     Plaintiffs repeat and re-allege paragraphs 1 through 61, as though fully set forth herein.

63.     The Producer's Deal Memo and Artist Deal Memos contained an implied covenant of good faith and fair dealing, including that Defendants would meaningfully consult with Plaintiffs as to the creative direction of *Helping Hands* and/or *Bristol Palin:  Life's A Tripp*,  selection and incorporation of music, and final cut of produced episodes.

64.     California law imposed on Defendants the duty to refrain from

CIVIL COMPLAINT

doing anything which would render performance of the subject contracts impossible by any act of their own, and also the duty to do everything that the contracts presuppose that each party will do to accomplish their purpose.

65.     Defendants have breached the implied covenant of good faith and fair dealing by doing the acts described above and, more specifically, (i) preventing Plaintiffs' performance under the contract in bad faith; (ii) failing to afford Plaintiffs "meaningful consultation" as to the creative direction and final cut of episodes for the Series; (ii) suddenly suspending the contract mid-production claiming a indefinite "hiatus," then harassing and forcing KYLE and CHRISTOPHER to vacate their residence; (iii) failing to pay Plaintiffs the guaranteed compensation but, instead, attempting to re-write the fully-executed contract in bad faith; (iv) failing to incorporate selected musical compositions; (v) cutting Plaintiffs out of their participating in and production of the Series to avoid paying and crediting them for their services; (vi) failing to obtain the authorization of Plaintiffs to include their names, likenesses, and images in unrelated shows that pre-dated and were never contemplated under the subject contracts.

66.     As a proximate result of Defendants' conduct, Plaintiffs have sustained damages according to proof.

/ /

/ /

CIVIL COMPLAINT

## SIXTH CLAIM FOR RELIEF

### (Misappropriation Of Name, Image, and Likeness
### -- Violation of California Civil Code §3344
### [Brought by KYLE and CHRISTOPHER Only Against ATI and STANTON and DOES 1 -10]

67.     Plaintiffs, and each of them, repeat and re-allege paragraphs 1 through 66, as though fully set forth herein.

68.     Civil Code section 3344(a) provides, in pertinent part:

> (a)  Any person who knowingly uses another's name, voice, signature, photograph, or likeness, in any manner, on or in products, merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods or services, without such person's prior consent . . . shall be liable for any damages sustained by the person or persons injured as a result thereof.  In addition, in any action brought under this section, the person who violated the section shall be liable to the injured party or parties in an amount equal to the greater of seven hundred fifty ($750) or the actual damages suffered by him or her as a result of the unauthorized use, and any profits from the unauthorized use that are attributable to the use and are not taken into account in computing the actual damages.

69.     In addition to the foregoing, Defendants, and each of them, specifically engaged in conduct which violated Section 3344 of the Civil Code by, *inter alia*, knowingly incorporating the names, voices, and video recorded images of CHRISTOPHER and KYLE in television programming, such as *World's Funniest Moments* and *Elizabeth Stanton's Great Big World* and *Laura McKenzie's Traveler*, without their authorization.  Defendants engaged in this conduct for the purpose of soliciting the ongoing and further sale and syndication of these and other ATI

- 28 -

CIVIL COMPLAINT

shows, as well as ATI's ancillary goods, merchandise and services.  The shows have

been packaged, sold, published throughout the country through television networks,

on YouTube, and other websites of ATI, Elizabeth Stanton, and Laura McKenzie to

sell and commercially exploit the Syndicated Series, as well as ATI's other services

and products, generally, to television networks.

70.     As a proximate result of Defendants' statutory violation, Plaintiffs

have sustained damages according to proof and are entitled to all profits.

71.     Section 3344(a) provides that the prevailing party in any action

under that section shall recover attorneys' fees and costs.  Accordingly, Plaintiffs

are entitled to such fees and costs as provided by statute.

## SEVENTH CLAIM FOR RELIEF
### (Tortious Interference with Prospective Economic Advantage—
### [Brought by All Plaintiffs Against All Defendants and DOES 1-10]

72.     Plaintiffs, and each of them, repeat and re-allege paragraphs 1 through

71 as though fully set forth herein.

73.     Plaintiffs' business relationship with BRISTOL, as a

participant in media projects created, written, and/or produced by Plaintiffs, such as

*Bristol-ogy 101* and *Helping Hands*, has been advantageous to Plaintiff.  There

existed a probability of future economic benefit to Plaintiffs from such relationship.

74.     Plaintiffs are informed and believe and on that basis allege that

Defendants knew or had reason to know of the existing economic relationship and

CIVIL COMPLAINT

future economic advantage resulting from the relationship between BRISTOL and Plaintiffs.  Defendants intentionally interfered with Plaintiffs' business relationship with BRISTOL.  Defendants' intentional wrongful conduct consisted of their breaches of the applicable agreements alleged herein, Defendants' suspension of the production of *Helping Hands*, falsely claiming to BRISTOL that Plaintiffs breached the applicable agreements, damaged property, and engaged in other unprofessional conduct.  Defendants engaged in the foregoing conduct to lure away and induce BRISTOL to attach to another competing and substantially similar reality series, *Bristol Palin: Life's a Tripp*, without Plaintiffs' economic participation but under the same production company and television network, namely ATI and AETN.

75. As a direct and proximate result of Defendant's conduct, Plaintiffs have suffered damages in an amount to be determined at trial.

76. In doing the acts herein alleged, Defendants acted with oppression, fraud, malice, and in conscious disregard of the rights of Plaintiffs, and Plaintiffs are therefore entitled to punitive damages according to proof at the time of trial.

## EIGHTH CLAIM FOR RELIEF

### (Unfair Competition—Violation of Cal. Bus. & Prof. Code §17200— [Brought by All Plaintiffs Against All Defendants and DOES 1-10]

77. Plaintiffs, and each of them, repeat and re-allege paragraphs 1 through 76 as though fully set forth herein.

78. The foregoing conduct constitutes unfair, unlawful, and

- 30 -

fraudulent business acts or practices in violation of Business & Professions Code §17200.

79.     As a proximate result, Plaintiffs have or will suffer irreparable harm in the future if Defendants are not enjoined from (i) enforcing any non-competition provisions in the subject contracts alleged herein; (ii) continuing to publish works featuring KYLE and CHRISTOPHER without providing credit or compensation; (iii) continuing to misappropriate the voices, names, and images of KYLE and CHRISTOPHER; (iv) continuing to use Plaintiffs' television concept *Bristol-ogy 101, Helping Hands, and/or Bristol Palin:  Life's A Tripp* without crediting and compensating Plaintiffs; (v) wrongfully interfering with Plaintiffs' prospective economic advantage and business relationship with BRISTOL by suspending the contracts with Plaintiffs under false pretenses while, at the same time, inducing BRISTOL to work on a competing reality series derived from ANGEL's status as creator of *Helping Hands*.

80.     There is no adequate remedy at law for the recurring damage done to Plaintiffs' reputation and image if Defendants are permitted to sell and/or air several unauthorized works bearing Plaintiff's name, voice, and images that were never included as part of the written contracts between the parties.

81.     Based on the foregoing, Plaintiffs pray for orders of preliminary and permanent injunctive relief and restitution as follows:  (1) that Defendants cease and desist from copying, reproducing, distributing, and publishing networks any

works bearing the name, image, likenesses of KYLE and CHRISTOPHER in any

television episodic series; (2) disgorgement of all ill-gotten profits earned by virtue

of Defendants unauthorized sale and distribution of unauthorized works bearing the

name, image, and likenesses of KYLE and CHRISTOPHER; (3) restitutionary relief

including gross profits received by ATI for *Bristol Palin:  Life's A Tripp.*

## NINTH CLAIM FOR RELIEF

### (Constructive Trust & Accounting)
### [Brought by All Plaintiffs Against All Defendants and DOES 1 to 10]

82.    Plaintiffs, and each of them, repeat and re-allege paragraphs 1 through

81 as though fully set forth herein.

83.    By virtue of Defendants' wrongful conduct, Defendants have illegally

received money and profits that rightfully belong to Plaintiffs.  Upon information

and belief, Defendants hold the illegally received money and profits in the form of

bank accounts, real property, or personal property that can be located and traced.

Defendants hold the money and profits they have illegally received as constructive

trustees for the benefit of Plaintiffs.

84.    Plaintiffs are entitled, pursuant to 17 U.S.C. § 504, to

recover any and all profits of Defendants that are attributable to their acts of

infringement. Plaintiffs are likewise entitled to any and all profits derived from their

misappropriation under Civil Code §3344.

86.    Plaintiffs are entitled, pursuant to 17 U.S.C. § 504 to actual or statutory

damages sustained by virtue of Defendants' acts of infringement.

87.     The amount of money due from Defendants to Plaintiffs is unknown to Plaintiffs and cannot be ascertained without a detailed accounting by Defendants of the precise number of units of infringing material copied, advertised, marketed, offered or distributed by Defendants.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request judgment against the Defendants as follows:

1.  That the Court issue injunctive relief against Defendants, and that Defendants, their directors, principals, officers, agents, representatives, servants, employees, attorneys, successors and assigns, and all others in active concert or participation with Defendants, be preliminarily and permanently enjoined and restrained from (a) copying, modifying, distributing or making infringing use of derivative works of *Bristol-ogy 101* and *Helping Hands,* such as *Bristol Palin: Life's a Tripp*; (b) copying, reproducing, distributing, and publishing networks any works bearing the name, image, likenesses of KYLE and CHRISTOPHER in any unapproved media programming for commercial purposes without their written consent; (c) disgorgement of all ill-gotten profits earned by virtue of Defendants unauthorized sale and distribution of unauthorized works bearing the copyrighted works, as well as the names, images, and likenesses of Plaintiffs; (d) mandatory injunctive relief ordering Defendants to specifically perform and pay Plaintiffs

- 33 -

CIVIL COMPLAINT

under the terms of the Artist Deal Memos and Producer's Deal Memo in connection with *Helping Hands* and *Bristol Palin: Life's A Tripp*;

2.  That the court impose a constructive trust on all monies received by Defendants derived from *Helping Hands* and/or *Bristol Palin: Life's A Tripp,* and their unauthorized use, copying, and misappropriation of any of Plaintiffs' works and the Syndicated Series.  Moreover, the court should order that Defendants provide a full and accurate accounting to Plaintiffs for all monies and profits received by Defendants derived for their unauthorized use, copying, and misappropriation.

3.  That the Court award any and all damages to which Plaintiffs are entitled under the United States Copyright Act and California law, including but not limited to, statutory and exemplary damages for Defendants' "willful" infringement and misappropriation, including enhanced penalties, attorneys' fees and costs.  (17 U.S.C. §504; Cal. Civ. Code §3344(a).)

4.  That the Court grant Plaintiffs rescission and restitution for the reasonable value of all benefits the Defendants unlawfully received by reason of their copyright infringement, breaches, fraudulent conduct, torts, and acts of misappropriation.

5.  That the Court order Defendant to pay Plaintiffs' litigation expenses, including reasonable attorney's fees and costs of this action; and

6.  That the Court award punitive damages sufficient to deter Defendants' unlawful conduct;

CIVIL COMPLAINT

7.  That the Court grant Plaintiffs any such further relief as the Court may deem just and proper.

October ___11___, 2012                 LAW OFFICES OF COURTNEY M. COATES

                                       By: _____
                                           COURTNEY M. COATES, ESQ.
                                           Attorneys for Plaintiffs
                                           MASSEY ENTERPRISE
                                           INTERNATIONAL, INC., BOY-O-BOY
                                           ENTERTAINMENT, INC., ANGEL
                                           MASSEY, KYLE MASSEY, and
                                           CHRISTOPHER MASSEY

                        **DEMAND FOR JURY TRIAL**

Pursuant to Local Civil Rule 38-1, Plaintiffs, and each of them, hereby demand a jury and respectfully reserve their right to a jury trial.

                                       LAW OFFICES OF COURTNEY M. COATES

                                       By: _____
                                           COURTNEY M. COATES, ESQ.,
                                           Attorneys for Plaintiffs

- 35 -

CIVIL COMPLAINT