1  Stephen G. Contopulos, SBN 50317
   scontopulos@sidley.com
2  Bradley H. Ellis, SBN 110467
   bellis@sidley.com
3  Wesley R. Montalvo, SBN 280570
   wmontalvo@sidley.com
4  SIDLEY AUSTIN LLP
   555 West Fifth Street, Suite 4000
5  Los Angeles, California 90013
   Telephone: (213) 896-6000
6  Facsimile: (213) 896-6600

7  Attorneys for Defendant
   A&E TELEVISION NETWORKS, LLC

8          **UNITED STATES DISTRICT COURT**

9     **IN AND FOR THE CENTRAL DISTRICT OF CALIFORNIA**

10

11 MASSEY ENTERPRISE                )**CV12-05327 JFW (MRWx)**
   INTERNATIONAL, INC., et al.      )
12                                  )**DEFENDANT A&E TELEVISION**
              Plaintiffs,           )**NETWORKS, LLC'S**
13                                  )**MEMORANDUM OF POINTS AND**
          v.                        )**AUTHORITIES IN SUPPORT OF**
                                    )**MOTION TO COMPEL**
14 ASSOCIATED TELEVISION            )**ARBITRATION**
   INTERNATIONAL, et al.            )
15                                  )[Filed concurrently with Notice of
              Defendants.          )Motion and Motion; Declaration of
16                                  )Richard Casares; Proposed Order]
17                                  )
                                    )**Date: November 19, 2012**
18                                  )**Time: 1:30 p.m.**
                                    )**Department 16**
19                                  )
                                    )**Assigned To: Hon. John F. Walter**
20                                  )**Action filed: June 19, 2012**

21

22

23

24

25

26

27

28

---

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiffs are two actors (Kyle and Christopher Massey), their mother (Angel Massey) and related entities (Massey Enterprise International, Inc. ("MEI") and Boy-O-Boy Entertainment, Inc. ("Boy-O-Boy")) (collectively "Plaintiffs").  Collectively, Plaintiffs entered into three contracts to provide services in connection with a proposed reality television series titled *Helping Hands* produced by defendants Associated Television International ("ATI"), Helping Hands, LLC ("Helping Hands"), and David McKenzie a.k.a. David Stanton ("McKenzie"), and intended to be aired on Bio, a channel owned by defendant A&E Television Networks, LLC ("AETN," sued erroneously as "A&E Networks, LLC")) (collectively, "Defendants").  The series was to feature Kyle and Christopher Massey along with the daughter of Sarah Palin, Bristol Palin, and Bristol's son, Tripp.  Upset that the series never came to fruition, Plaintiffs filed this action, asserting a variety of claims in their Second Amended Complaint (the "SAC") against AETN, all of which relate to Plaintiffs' contracts (counts one, four, five, and seven through nine —the "*Helping Hands* Counts").  However, in those contracts, Plaintiffs unequivocally agreed that "any dispute" would be subject to binding arbitration.  Despite that agreement, Plaintiffs have refused to arbitrate.  No grounds justify that refusal.  Therefore, by this Motion, AETN respectfully requests that the Court (1) compel arbitration of the *Helping Hands* Counts pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.* (the "FAA") and the California Arbitration Act, Code Civ. Proc. §§ 1280 *et seq.* (the "CAA"); (2) dismiss the *Helping Hands* Counts pursuant to Rules 12(b)(1) and (3) of the Federal Rules of Civil Procedure[2]; and (3) in the event the Court finds any of the *Helping Hands* Counts non-arbitrable, stay further proceedings pending arbitration.[3]

---

[2] *Valley Power Sys., Inc. v. Gen. Elec. Co.*, No. CV 11-10726 CAS, 2012 WL 665977 at *7 (C.D. Cal. Feb. 27, 2012) ("Substantial case law establishes that [Rules 12(b)(1),

*(Footnote continued)*

## II.    BACKGROUND

Plaintiffs allege that they created the concept of *Helping Hands* and were wronged by the cancellation of that project.  They further allege that they were excluded from another reality television program entitled *Bristol Palin: Life's a Tripp* (the "Palin Series"), alleging it is derivative of *Helping Hands* and that they own certain concepts incorporated into the Palin Series.  SAC ¶¶ 35, 37.  Plaintiffs' participation in *Helping Hands* was governed by three agreements: two coterminous "Artists' Deal Memos" and a "Producer's Deal Memo" (collectively, the "Deal Memoranda").  SAC ¶¶ 25, 30; Exhibits ("Exhs.") A and B to Declaration of Richard Casares ("Casares Decl.").  Counts one, four, five, and seven through nine of the SAC relate to these agreements in various ways, and form the subject matter of this Motion.

Specifically, Plaintiffs' copyright infringement claim (count one) alleges that *Helping Hands* was created by Angel Massey, is based on a treatment authored by her entitled *"Bristol-ogy 101,"* and that the language of the Producer's Deal Memo reserves various intellectual property rights for her.  SAC ¶¶ 30, 42.  It is that reservation of rights that allegedly gives her ownership of the copyrights she alleges Defendants infringed.  SAC ¶¶ 32, 37, 42.  The claims for breach of contract (count four) and breach of the implied covenant of good faith and fair dealing (count five) allege that Defendants did not perform duties imposed on them by the Deal Memoranda.  SAC ¶¶ 56, 63, 65.  The tortious interference claim (count seven) alleges that Defendants intentionally interfered with Plaintiffs' business prospects by,

_____

(3), and (6)] are the correct rules under which to seek dismissal based on an arbitration provision.").

[3] Requests for an order compelling arbitration are heard and ruled upon "in the manner provided by law for the making and hearing of motions."  9 U.S.C. § 6.  By bringing this Motion to Compel Arbitration, Defendants do not waive their right to challenge the sufficiency of the SAC pursuant to Federal Rules of Civil Procedure R. 12(b)(6).  *See, e.g.*, *Morales v. University of Phoenix*, Case No. 08-01754-PHX-FJM, 2009 WL 510907, at *1 (D. Ariz. Feb. 27, 2009) (party may file motion to compel arbitration in lieu of answering or otherwise responding to complaint).

among other things, Defendants' "breaches of the *applicable agreements* alleged herein, Defendants' suspension of the production of *Helping Hands,* [and] falsely claiming to BRISTOL that Plaintiffs breached the *applicable agreements* . . . ." SAC ¶ 75 (emphases added).  Plaintiffs claim unfair competition (count eight) by alleging, among other things, that the noncompetition agreements in the Deal Memoranda— "the subject contracts alleged herein"—are illegal and must be enjoined.  SAC ¶ 80. And finally, Plaintiffs' request for a constructive trust and accounting (count nine) seeks to collect profits to which they are allegedly entitled based on rights established by the Deal Memoranda.  SAC ¶ 84–85.

## III.    THE AGREEMENTS AT ISSUE

### A.    The Artists' Deal Memos

On March 23, 2011, ATI and MEI entered into two written agreements called the Artists' Deal Memos.  Exh. A to Casares Decl.  Through the Artists' Deal Memos, Kyle and Christopher Massey agreed they would perform for the production of ten episodes of *Helping Hands*.  Exh. A to Casares Decl., Page 2.  For its part, Helping Hands agreed to pay $25,000 to each of the two artists on a per-episode basis.  Exh. A to Casares Decl., Page 2.

The terms of the Artists' Deal Memos require the arbitration of any dispute that arises out of the contract.  Exh. A to Casares Decl., Page 3, clause 4.  The Artists' Deal Memos state: "This Agreement shall be governed by California Law and *any dispute shall be subject* [to] *binding arbitration*."  (Emphasis added.)

### B.    The Producer's Deal Memo

On July 15, 2011, Helping Hands and Boy-O-Boy entered into a written agreement entitled Producer's Deal Memo.  Exh. B to Casares Decl.  Through the Producer's Deal Memo, which she signed, Angel Massey agreed to act as a producer of *Helping Hands*.  Exh. B to Casares Decl., Page 8.  In exchange, Helping Hands agreed to pay her $10,000 on a per-episode basis.  *Id*.

1    The terms of the Producer's Deal Memo require the arbitration of any dispute

2    that arises out of the contract.  Exh. B to Casares Decl., Page 9, clause 4.  The

3    Producer's Deal Memo states: "This Agreement shall be governed by California Law

4    and *any dispute shall be subject to non-appealable binding arbitration pursuant to the*

5    *Rules of JAMS*."  (Emphasis added.)

6    **IV.    LEGAL STANDARD**

7    The Federal Arbitration Act (the "FAA") provides that arbitration agreements

8    in contracts "evidencing a transaction involving [interstate] commerce . . . shall be

9    valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity

10   for the revocation of any contract."  9 U.S.C. § 2.[4]  The FAA thus promotes a "liberal

11   federal policy favoring arbitration agreements," and "questions of arbitrability must be

12   addressed with a healthy regard for the federal policy favoring arbitration."  *Moses H.*

13   *Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *id.* at 24–25

14   (noting that under the FAA, "any doubts concerning the scope of arbitrable issues

15   should be resolved in favor of arbitration"); *see also Perry v. Thomas*, 482 U.S. 483,

16   490–91 (1987) (stating that arbitration agreements falling within the scope of the FAA

17   "must be 'rigorously enforce[d]'") (citations omitted).  Indeed, the United States

18   Supreme Court has held that the FAA "leaves no place for the exercise of discretion

19   by a district court, but instead mandates that district courts *shall* direct the parties to

20

21   _____

22   [4] The United States Supreme Court has made clear that the FAA is extremely broad
     and applies to any transaction directly or indirectly affecting interstate commerce.
23   *See, e.g.*, *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 277 (1995).  The
     "interstate commerce" requirement is readily satisfied here.  The parties in this dispute
24   were engaged the business of producing a television show to be aired across state
     lines, which involved footage shot in different states.  SAC ¶ 31.  However, even if
25   the Court were to conclude that the FAA is inapplicable and that, instead, California
     law applies to arbitration provision, the Court should nonetheless compel arbitration.
26   The California Arbitration Act, like the FAA, reflects a strong policy in favor of
     arbitration.  Pursuant to section 1281.2 of the California Code of Civil Procedure,
27   when the Court "determines that an agreement to arbitrate the controversy exists," the
     Court "shall" order arbitration.  Cal. Civ. Proc. Code §1281.2.

28

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL ARBITRATION**

1  proceed to arbitration."  *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985)

2  (emphasis in original).

3      In determining whether to compel arbitration under the FAA, a district court

4  may not review the merits of the dispute; rather, the court must limit its inquiry to

5  whether: (1) a valid, enforceable agreement to arbitrate exists; and (2) the claims at

6  issue fall within the scope of that agreement.  *See, e.g.*, *Chiron Corp. v. Ortho*

7  *Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).  Moreover, the burden is

8  on the party resisting arbitration to show that the arbitration agreement is invalid or

9  does not encompass the claims at issue.  *Green Tree Fin. Corp.-Ala. v. Randolph*, 531

10  U.S. 79, 91–92 (2000).

11      Once it is determined that the parties have entered into a binding arbitration

12  agreement, arbitration must be compelled "unless it may be said with positive

13  assurance that the arbitration clause is not susceptible of an interpretation that covers

14  the asserted dispute."  *AT&T Tech., Inc. v. Comm. Workers of Am.*, 475 U.S. 643, 650

15  (1986).

16  **V.    ARGUMENT**

17      **A.    The Arbitration Provisions Are Valid and Enforceable**

18      Plaintiffs have not claimed that the arbitration provisions in the Deal

19  Memoranda are invalid.  They have instead attempted to avoid their agreements by

20  asserting that their causes of action or requests for relief are outside the scope of the

21  arbitration provisions.  Plaintiffs' assertions are incorrect.[5]  *See Luchini v. Carmax,*

22  *Inc.*, No. CV F 12-0417, 2012 WL 2995483 at *14 (E.D. Cal. July 23, 2012).  The

23  arbitration clauses in the Deal Memoranda are mutual provisions and call for

24  adjudication by arbitration of "***any dispute***," without qualification.  The Deal

25

26  _____

27  [5] Plaintiffs' counsel made these assertions during the conference of counsel held
    pursuant to Local Rule 7-3.

28

1   Memoranda are both signed by Angel Massey on behalf of the other Plaintiffs.  No

2   credible argument could be made that the arbitration agreements are unenforceable.

3        **B.**     **AETN Is Entitled to Enforce the Arbitration Agreements**

4        AETN is entitled to enforce the arbitration clauses in the Deal Memoranda

5   because it is an intended third-party beneficiary of the Deal Memoranda.  Plaintiffs

6   concede as much:  "AETN is also an intended third-party beneficiary under the

7   contracts mentioned herein."  SAC ¶ 12; *see Comer v. Micor, Inc.*, 436 F.3d 1098,

8   1101 (9th Cir. 2006) ("[N]onsignatories can enforce arbitration agreements as third

9   party beneficiaries.") (citing *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber

10   & Resin Intermediates*, 269 F.3d 187, 195 (3d Cir. 2001)); *Arellano v. T-Mobile USA,

11   Inc.*, C 10-05663 WHA, 2011 WL 1362165 (N.D. Cal. Apr. 11, 2011); *Macaulay v.

12   Norlander*, 12 Cal. App. 4th 1, 8 (1992) (holding that a securities broker "was a third-

13   party beneficiary to the . . . agreement and entitled to arbitrate"); *Outdoor Services,

14   Inc. v. Pabagold, Inc.*, 185 Cal. App. 3d 676, 681 (Ct. App. 1986).

15        **C.**     **Plaintiffs' Causes of Action Are Covered by the Arbitration**

16              **Provisions**

17        The disputes alleged by counts one, four, five, and seven through nine of the

18   SAC all fit comfortably within the arbitration agreements.  As noted, the agreements

19   are all-encompassing.  The Producer's Deal Memo states that "any dispute shall be

20   subject to non-appealable binding arbitration pursuant to the Rules of JAMS."  Exh. B

21   to Casares Decl.  The Artists' Deal Memos state that "any dispute shall be subject [to]

22   binding arbitration."  Exh. A to Casares Decl.  This language could not speak more

23   forcefully in favor of arbitration of the counts in the SAC.  As one court observed:

24        "The words 'any disputes arising from or relating to this agreement' have

25        been held to even include disputes not arising under the agreement, if the

26        disputes have a 'significant relationship' to the agreement. . . .  When the

27        arbitration clause in a contract is broad, the strong presumption in favor

28        of arbitration applies with even greater force."

6

1    *ValueSelling Associates, LLC v. Temple*, 09 CV 1493 JM, 2009 WL 3736264, at *2

2    (S.D. Cal. Nov. 5, 2009) (citations omitted).

3        Where, as here, the arbitration clause is broad and unqualified, there is a

4    heightened presumption of arbitrability, such that "only the most forceful evidence of

5    a purpose to exclude the claim from arbitration can prevail." *AT&T Tech., Inc. v.*

6    *Comm. Workers of Am.*, 475 U.S. 643, 650 (1986).

7        All the disputes pled in the SAC against AETN fall within the terms of these

8    arbitration agreements.  Plaintiffs' copyright infringement claim (count one) alleges

9    that *Helping Hands* was created by Angel Massey, is based on a treatment authored by

10   her entitled "*Bristol-ogy 101*," and that the language of the Producer's Deal Memo

11   reserves various intellectual property rights for her.  SAC ¶¶ 42, 30.  Plaintiffs allege

12   that these are the rights that underpin the copyright claim.  SAC ¶ 32.  Furthermore,

13   *Helping Hands*, Angel Massey's alleged creation, was at the very heart of the Deal

14   Memoranda.  Thus, Plaintiffs' copyright infringement claim is inextricably bound up

15   with the Deal Memoranda and, therefore, must be arbitrated in accordance with their

16   plain terms.

17       The claims for breach of contract (count four) and breach of the implied

18   covenant of good faith and fair dealing (count five) allege that Defendants breached

19   the Deal Memoranda.  SAC ¶¶ 56, 63, 65.  These claims turn on the language and

20   duties imposed by the agreements, and so undoubtedly relate to the agreements and

21   must be arbitrated.

22       The tortious interference claim (count seven) alleges that Defendants

23   intentionally interfered with Plaintiffs' business prospects by, among other things,

24   Defendants' "breaches of the ***applicable agreements*** alleged herein, Defendants'

25   suspension of the production of *Helping Hands,* [and] falsely claiming to BRISTOL

26   that Plaintiffs breached the ***applicable agreements*** . . . ."  SAC ¶ 75 (emphases

27   added).  This claim relates to the Deal Memoranda because it requires (among many

28

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL ARBITRATION**

other things) the existence of the Deal Memoranda and their breach for its success.  It is therefore subject to the arbitration agreements.

Plaintiffs attempt to state a claim for unfair competition (count eight) by alleging that "[t]he foregoing conduct" constitutes unfair or unlawful business practices.  SAC ¶ 79.  Within this all-encompassing allegation, Plaintiffs incorporate all their previous assertions relating to the Deal Memoranda, so count eight relates to those agreements.  Furthermore, Plaintiffs request that the noncompetition agreements in the Deal Memoranda be enjoined, along with *Helping Hands*, the subject of the Deal Memoranda.  SAC ¶ 80.  Therefore, count eight relates to the Deal Memoranda and must be arbitrated.

Finally, Plaintiffs' request for a constructive trust and accounting (count nine) seeks to collect profits to which they are allegedly entitled under the terms of the Deal Memoranda, which allegedly reserves a share of profits (SAC ¶ 30) and copyrights for Plaintiffs.  SAC ¶ 84–85.  Count nine thus requires an examination of the terms of the Deal Memoranda to be resolved, and should therefore be ordered to arbitration.

### D.	Plaintiffs Refuse to Arbitrate

On October 4, 2012, counsel for AETN requested that Plaintiffs proceed with arbitration of this litigation in the manner provided in the Agreements.  Plaintiffs refused, and continue to refuse, to do so.

As shown above, all of the elements necessary to order the counts against AETN to arbitration are present: (1) unequivocal and broad agreements to arbitrate covering "any dispute" related to the Deal Memoranda; (2) AETN's entitlement to enforce those agreements as a third-party beneficiary of them; (3) each cause of action falls within the terms of the arbitration agreement; and (4) Plaintiffs' refusal to arbitrate, notwithstanding their agreement to do so.  Accordingly, the Court should grant this motion and order the *Helping Hands* Counts against AETN to arbitration.

### E.	Dismissal of the SAC or A Stay Of Proceedings Pending Arbitration Is Appropriate

"The weight of authority clearly supports dismissal of the case when *all* of the issues raised in the district court must be submitted to arbitration." *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992).  Alternatively, section 3 of the FAA allows the district court to stay all aspects of litigation, including discovery, pre-trial proceedings, and trial, pending resolution of the arbitration.  9 U.S.C. § 3; *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002).  AETN respectfully requests that this Court dismiss this action without prejudice, or in the alternative, stay proceedings in this matter, pending arbitration between the parties.

## VI.   CONCLUSION

For the foregoing reasons, AETN respectfully requests that this Court compel Plaintiffs to arbitrate with AETN counts one, four, five, and seven through nine of the SAC in accordance with the valid arbitration provisions found in the Artists' Deal Memos and Producer's Deal Memo,[6] and that the Court either dismiss this action or stay all proceedings pending arbitration.

Dated:  October 19, 2012

SIDLEY AUSTIN LLP
Stephen G. Contopulos
Bradley H. Ellis
Wesley R. Montalvo


By:    /s/ *Stephen G. Contopulos*
Stephen G. Contopulos

Attorneys For Defendant
A&E Television Networks, LLC

---

[6] As noted, the Producer's Deal Memo specifies JAMS as the forum for arbitration. AETN therefore requests that the Court order arbitration pursuant to the rules of JAMS.